THOMAS ROBINSON, Ex'r., &c. *v.* HENRY McIVER and others.

1. General pecuniary legacies are not chargeable upon or to be pre-
   ferred to, specific devises of land, although the latter be found in
   a *residuary clause* which also includes personalty.

2. A legacy in contemplation of emancipation and removal, to. one
   who was a slave when the will was written, is valid; and a bequest
   made in trust for the removal of such slave, with balance if any to
   him, is, under the results of the war, payable to him without abate-
   ment.

3. An Executor not expressly charged with such, has no official duty
   in connection with bequests of annuities charged upon land.

4. Upon the death (before the testator's) of a residuary legatee (a
   nephew and one of the heirs of the testator,) the real and personal.
   estate given to him lapses for the benefit of the testator's heirs and.
   next of kin.

5. In case of such lapse, an annuity charged upon the land in favor
   of one of the heirs, will abate *pro rata*.

( *Whedbee* v. *Shannonhouse*, Phil, Eq., 283, *Hayley* v. *Hayley*, *Ib.* 180,.
cited and approved.)

CIVIL-ACTION to obtain the construction of a will, tried by
*Buxton, J.*, at RICHMOND, Spring Term 1869.

The testator, Henry W. Harrington, published his will in
due form in December 1860, devising and bequeathing amongst
numerous relatives and friends a large estate in lands, slaves
and other personal property. The will was elaborate, inclu-
ding 28 *sections*, and some twenty or more copy sheets. The

testator died March 2d, 1868, and his will was duly proved before the Judge of Probate for Richmond county, Nov. 6th, 1868.

The results of the war, in emancipating the slaves and rendering insolvent many of the debtors of the testator, had raised the questions now brought before the Court, and they render it necessary to set out the following portions of the will, either in substance, or at length.

By the first *section* the testator provided for the payment of his debts by crop and money on hand, so far as necessary. The following six sections disposed of certain books, &c., as mementoes. The next following sections, to 17 inclusive, gave considerable pecuniary legacies to various persons, without charging them on land, or any other fund.

Section 18 gave to trustees, for Mrs. Cynthia Cole, the plantation and tract of land whereon he resided, also certain slaves, and farming stock, &c., for her use, &c., during her life; and on her death to go into the residue of the estate.

Section 19 provided an annuity of $300 for Mrs. Cole.

Section 20 gave to Stephen W. Covington a slave named Alexander Hambleton, his wife and family, in trust to be removed to Mexico where they might be free, but if on account of the disturbed condition of that country, or for other reason that could not be done, then to Ohio; but if that should be impracticable, then to St. Domingo. And then, by section 21, $1,000 was given to said Alexander, upon his arrival and settlement in either of those places; and $500 to Mr. Covington, in trust for payment of expenses attendant upon the removal, with balance after such payment to said Alexander, and $500 to himself, for his trouble, &c.

Section 22 provided that if the project in the two immediately preceding sections, should be impracticable, the slaves therein mentioned should fall into the residue, and the matter left to the consideration of the residuary legatee.

By section 23, certain mementoes were given to his sister Harriet H. Strong.

By section 24 an annuity of $1,000 was given to his sister

Harriet; and by section 24 this annuity and that to Mrs. Cole were made "a charge upon, and to be paid out of, the residue of my estate hereafter to be disposed of."

Section 26 directed an executor to sell certain lands in Sumner county, Tennessee, and the testator's interest in certain tracts and parts of tracts in Richmond county, N. C., called "Speculation" or "Big Survey" lands, and that the proceeds should fall into the residue of his estate.

Section 27, "I give, devise and bequeath to my nephew, Henry W. Harrington, all the rest and residue of my estate, both personal and real, of every description whatever, (not hereinbefore devised or bequeathed,) including the remainder in all the property hereinbefore devised and bequeathed to my friend Cynthia Cole after the consummation of her life estate therein, and consisting principally of about sixteen or seventeen thousand acres of land, in divers tracts and parts of tracts on Pedee river, Edward's creek, &c., &c., also the following negro slaves, to-wit :" &c., &c.

Section 28 gave a legacy of $200 to one Mary Lucas.

A paragraph followed in which certain persons, including the plaintiff, were appointed executors.

After setting forth the will the complaint stated that a large number of the legatees, among others Mrs. Strong and the residuary legatee, were also heirs of the testator; and that a number of them, including such residuary legatee, died (the latter leaving children,) before he did.

The questions asked of the Court, were:

1. Whether the pecuniary legacies were to be charged on the land, in the absence of other property to pay them; and if so, whether any distinction as to order of application, were to be made between the *proceeds* of the land ordered to be sold, and the other land ?

2. Whether the executor were chargeable with any duty in respect of the pecuniary legacies chargeable on the land ?

3. Whether the land and personal estate devised to Henry W. Harrington, jr., lapsed, or devolved upon his children ?

4. Whether if any land lapsed, the legacy to Mrs. Strong (an heir) would abate in part, or be paid in full.

5. Whether the legacy of $1,000 to Hambleton, be valid?

6. Whether the two legacies of $500 to Covington be demandable now, and if so, to whom are they to be paid: Covington or Hampton?

7. Out of what fund are the debts to be paid?

8. As the residuary legatee is dead, is it the executor's duty to make sale, as required in section 26?

Proper parties having been made, &c., his Honor gave a judgment, which it is not necessary to state, and from that decree, in order that the matter might be permanently disposed of, all parties appealed to the Supreme Court.

*Ashe,* for the plaintiff.

*Hinsdale,* for some of the defendants.

1. The provision for Harrington lapsed, and is void, and the land goes to the heirs; 3 Cruise 128, &c., 2 Ire. Eq. 330. *Hume.*v. *Wood,* 8 Pick. 478. Rev. Code, ch. 119, sec. 28, does not apply.

2. The pecuniary legacies are not chargeable upon the land given in the residue, 2 Atk. 626, 3 P. Wms. 323, Ambler 173, *Lupton* v. *Lupton,* 2 Ire. ch. 614, 1 Roper Leg. 671, That there is a mixed fund of realty and personalty is not enough, *Nyssen* v. *Gretton,* 2 Y. & C. Exc. 222, and *Reynolds* v. *Reynolds,* 16 N. Y. 257.

*Battle & Sons,* for others.

Where the land is not specially devised, but blended with personalty in a residuary clause, it is charged thereby with the legacies *Mirehouse* v. *Scaife,* 14 Eng. Ch. Rep. 696, *Francis* v. *Clemow,* 23 Eng. L. & E 125, *Lewis* v. *Darling,* 16 How. U. S. 1, *Givens* v. *Givens,* 1 Mur. 192.

They also cited Gallager's Appeal, 48 Pa. 121, and *Moore* v. *Beckwith,* 14 Ohio, 129.

PEARSON, C. J. 1. Are the pecuniary legacies a charge on the real estate embraced by the residuary clause?

To decide this question it is necessary to determine what real estate is embraced by the residuary clause.

The land devised to Mrs. Cole, to wit, the plantation on which the testator resided, is embraced, subject to her life estate; The sixteen or seventeen thousand acres in divers tracts on Pe Dee River, &c., are embraced: *Id certum est quod certum reddi potest*, by reference to the title deeds: And the proceeds of the sale of the tract of land in Sumner County Tennessee, and of "the Speculation" or "Big Survey" land in Richmond County, are embraced.

But these are *specific devises*, although set out in the residuary clause, and are expressly charged with the annuities of $300 to Mrs. Cole, and $1000 to Mrs. Harriet H. Strong. This, of itself, is enough to show that the general pecuniary legacies cannot be a charge by implication, on the land or the proceeds of that directed to be sold. The expression of one excludes the other: it might be that if the land was subjected to the pecuniary legacies, there would not remain a sufficiency to secure the annuities.

We concur in the position taken by the learned counsel, for which he cited many authorities, that when, in a residuary clause, land and personality are made a mixed fund, the land as well as the personalty is made subject to the payment of pecuniary legacies. This, however, is not on the footing of a *charge on land*, like the annuities in this case, but on the ground that in order to ascertain what is embraced in the residuary fund, it is necessary to take out the specific legacies, and then to deduct the pecuniary legacies, and only what remains is "the rest or residue of the estate." The residuary legatee takes only *what is left*.

Sometimes the residuary fund is treated as a matter of not much importance, as where a testator, after disposing of the bulk of his estate, adds, "the rest of my estate not herein before disposed of" &c., like the words "and other articles too tedious to mention" in a constable's advertisement of sale.

Sometimes the residuary clause is the substance of the will; as when a testator, after giving a few specific and pecuniary legacies, gives the bulk of his estate as the residue. In both of these cases the residue is ascertained by first taking out the specific and pecuniary legacies; and the residuary legatee is entitled only to what may be over and above, whether it be land or personalty. In this sense all of the cases are to be understood: not as allowing the property to go to the residuary legatee, *subject to a charge*, but as taking the amount of the pecuniary legacies out of the fund, as something which he is not entitled to, because it does not come under the discription.

Our case does not fall under either of these two classes, in respect to the land or the proceeds of the sale of the other land, but only in respect to such property or funds as do not pass by it specifically, and fall under the description of "what is left," after taking out the specific, and the payment of the pecuniary legacies.

This is an exceptional case, for in the residuary clause the testator makes specific devises and specific bequests. These are fixed with sufficient legal certainty, and are not included or left to depend upon the general words "what may be left," or "things too tedious to mention," or "such as may have been overlooked."

This same residuary clause sets out a specific legacy of many slaves, with particular instructions in regard to them. No one who reads it can for a moment suppose it was the intention of the testator, that these slaves should in any event be sold in order to pay the pecuniary legacies.

2. The pecuniary legacy to Alexander of $1000, and of $500 to pay expenses of removal are now absolute; the condition and purposes being met by emancipation; so this legacy takes grade with the other pecuniary legacies. *Whedbee* v. *Shannonhouse*, Phil. Eq. 283; *Hayley* v. *Hayley ib* 180.

3. The executor has no concern with the annuities: he will sell the Tennessee land, and the "Speculation land" (unless the heirs-at-law elect to take the land), and the proceeds of sale

together with the other land, descend to the heirs *cum onere;* and it is his duty to see that all other property not specifically bequeathed, is applied to the satisfaction of the pecuniary legacies, *pro rata.*

In the event of a lapse by the death of a legatee or devisee, the legal effect is the same as if the name had been left blank; and the party becoming entitled takes the property in the same manner, plight and condition, that the legatee or devisee would have taken. In our case, for instance, the heirs-at-law and next-of-kin take the real and personal estate, charged with the annuities; and what constitutes the fund will be ascertained in the same way as it would have been in respect to the residuary legatee had he been living. Mrs. Strong being one of the heirs, the annuity given to her will be subject to abatement *pro rata.*

We have disposed of all of the practical questions that now arise under the will. The loss of the slaves and the destruction of other personal property during the war, as appears from the pleadings, render the decison of the other points into which his Honor has entered with great minuteness, unnecessary.

The decree will be reversed in so far as it does not conform to this opinion, and a decree in these respects will be drawn in conformity thereto. The other parts of the decree below need not be referred to. The costs will be paid out of the fund.

PER CURIAM. Decree accordingly.