ROBERT N. JOHNSON Guard'n, &c. v. JOHN T. FARRELL, Ex'r. and others.

A testator died in 1864, leaving lands, and a sufficiency of personal estate to pay debts and legacies; by Emancipation the latter afterwards became insufficient; after giving some money legacies, and devising certain lands &c., to his wife for life, the testator had given to others "all my real and personal estate not heretofore disposed of ": Upon a question between the claimants of the money legacies, and those who claimed the land under the last provision, *Held*, that the loss subsequent to the death, fell upon the legatees, and not upon the devisees.

(*Robinson* v. *McIver.* 63 N. C. 645, cited and approved.)

ACTION for a legacy, tried before *Tourgee, J.,* at Fall Term 1869 of CHATHAM Court.

The facts were that one James C. Burke, the defendant's testator, died in 1864, leaving a will by which he gave to his wife two slaves and other personalty, also some land for life; then, to one grand child, $400, and to others, among them, $500; and afterwards, to his four living children, naming them, "all my real and personal estate not heretofore disposed of, to be equally divided between the four." At the time of his death the testator owned six slaves, of average value, besides other personal property, and lands.

The slaves were emancipated by the results of the war

before the estate had been settled, and, after paying the debts &c., there remained in the hands of the executor, for the satisfaction of the money legacies above, about $292 00.

The legatees claimed that the land given by the residuary clause was to be sold, and their legacies paid out of the proceeds, before the residuary devisees could take. This was resisted by the residuary devisees.

His Honor ordered that the land be sold, and its proceeds applied as prayed for by the plaintiff's; and the defendants appealed.

*Phillips & Merrimon* for the appellants.

I. It is doubtful how far the doctrine of *mixed or blended residues* of realty and personalty applies in North Carolina; as in England it seems to be a corollary from a proposition not received here : See *Robinson* v. *McIver*, 63 N. C. 645 ; also dissenting opinion in *Biddle* v. *Carraway*, 6 Jon. Eq. 95 ; *Dunn* v. *Keeling*, 2 Dev. 283; *Knight* v. *Knight*, 6 Jon. Eq. 134 ; *Graham* v. *Little*, 5 Ire. Eq. 407; *Harris* v. *Ross*, 4 Jon. Eq. 413. As all devises are still specific, even where found in a residue (*Hensman* v. *Fryer*, Law Reps., 3 Ch. Ap. 420) the language in *Knight* v. *Knight* &c., as to funds *primary* liable, is still law.

2. Where the deficiency in the personalty results from some accident after the testator's death (as here), there seems to be no reason why devisees of land (upon whom it devolves immediately, *Patton* v. *Patton*, Winst. 2d, 20, and not *through* the executor,) should refund, in consequence of a charge alleged to have arisen *after they received* their portions, *Lupton* v. *Lupton*, 2 John. Ch. 614 (p. 626).

This is upon a principle different from that in *Dyose* v. *Dyose*, (Wms. Ex'rs, 2d 1167), which has been overruled in England; and never was accepted in North Carolina, *Cloud* v. *Martin*, 2 D. & B. Eq. 274. There, the whole fund remained with the representative of the testator : Here, the

part sought to be subjected has gotten *home*. At the time when 'the land reached the devisees, there was no pretence that it was subject to diminution. The devisees of the land are not to share in a calamity which has fallen upon the claimants of the personalty.

(3.) Again, so far as the personalty has been taken to pay debts, these claimants are not entitled to be made whole: See *McBee, ex parte*, 63 N. C. 332; *Knight* v. *Knight* (above).

*Manning, contra.*

This is a case of *a mixed residue of realty and personalty*, within the principle laid down in *Robinson* v. *McIver*, 63 N. C. 645. He cited also 1 Red. Wills, p. 279, §§ 15 and 18, *Graves* v. *Howard*, 3 Jon. Eq. 302, 1 Rop. Leg. 675, 2d Red. Wills, 370 and n., *Bray* v. *Lamb*, 2 Dev. Eq. 372.

PEARSON, C. J. In *Robinson* v. *McIver*, 63 N. C. 645, it is said: "When land and personal estate are made a mixed fund in a residuary clause, the land, as well as the personalty is subject to the payment of pecuniary legacies. This, however, is not on the footing of a *charge on land*, like the annuities in this case, but on the ground 'that, in order to ascertain what is embraced in the residuary fund, it is necessary to take out the specific legacies, and then to deduct the pecuniary legacies, and only what remains is 'the rest or residue of the estate.' The residuary legatee (and devisee) takes only what is left."

In the will under consideration, all of the real and personal estate, "not heretofore disposed of," is given to the four living children of the testator. In order to ascertain what is embraced under this clause, according to a well settled rule that the personal estate is the *primary fund* for the payment of debts and pecuniary legacies, it is necessary to take out of the personal estate enough to pay debts. Then

take out the specific legacies to the widow; then deduct enough to satisfy the pecuniary legacies; and the rest passes under the description, "personal estate not heretofore disposed of."

By a like process, take out what land is given to the widow, and the rest passes to the devisees, under the description, "real estate not heretofore disposed of." If there had been a deficiency of personal estate to satisfy the pecuniary legacies, it may be that it would have been necessary to deduct from the land enough for that purpose, "not on the footing of a *charge on the land*," but as a means of ascertaining what land was embraced by the description.

In this case the personal estate was ample to pay debts, to set apart the specific legacies, and to satisfy the pecuniary legacies, leaving four slaves of average value, which, subject to these legacies, passed under the residuary clause. So the land, other than that given to the widow, was embraced by the description, and vested in the devisees, *free of any charge.*

It so turned out that afterwards the four negroes were lost to the fund by civil death. The question is, shall this loss fall on the pecuniary legatees, or have they a right to resort to the land which had already vested in the devisees. We can see no principle on which to make the land liable. Herein lies the significance of the distinction taken, in *Robinson* v. *McIver, supra,* betwen a *charge* on land, and the process by which to ascertain what land is embraced by the description. If these legacies had been charged on the land, like the annuties in the case referred to, as the devisees would have taken *cum onere,* the loss would fall on them. But as the land vested in them free of the charge, the loss by a subsequent event, that is the emanicipation of the slaves, must fall on the pecuniary legatees, in which loss the widow, in respect to her two negroes, and residuary legatees in respect to their interest in the other four, must be common sufferers.

His Honor being of opinion that the land in the hands of

the residuary devisees was liable for the pecuniary legacies, made an order of sale, and directed so much of the proceeds of sale as should be necessary, to be applied to the satisfaction thereof.

In this there is error.

Let this be certified.

PER CURIAM.　　　　　　　　　　　　　Order reversed.