BARBARA ALEXANDER *et al vs.* PETER A. SUMMEY *et al.*

1. A will is made in these words : I direct that my debts and funeral expenses be paid. I will and bequeath to my son, Peter A. Summey, twenty-five hundred dollars. I will and bequeath to my wife, Harriet Caroline, my house and lot in Lincolnton in which I now live, my plantation about one mile from Lincolnton, and my household and kitchen furniture, for and during her natural life, and a sufficient quantity of property or money for a year's support for herself and family. I also will absolutely to my wife the following slaves, Sophia, &c., also all the balance of my estate both real and personal, with the remainder after my wife's death, in my house and lot, plantation and household and kitchen furniture, to be equally divided between my children George L. Summey, Caroline Dusenberry, Barbara Alexander and Peter A. Summey, with the understanding, that the negroes I have already given to my son George shall be taken into account in said distribution, * * * * * * * *held,* that the leading idea in the testator's mind was to make all of his children equal with an advantage to his son, Peter A. Summey, to the extent of $2,500.

2. The will having been made in September, 1864, when Confederate money had become so depreciated as not to deserve the name of a currency : to construe the legacy to Peter as payable in Confederate currency would be to "mock," the legatee, therefore, *held,* that Peter's legacy must be estimated at its nominal value in good money.

3. On the other hand, the major part of the testator's estate having consisted of slaves which were lost by emancipation, it would not carry out the testator's intention to pay Peter's legacy in full, and leave nothing for the other legatees, therefore *held,* that Peter's legacy must abate proportionally.

4. The rule of proportion is : To ascertain the value of the whole estate at testator's death, and the proportion that Peter's legacy of $2,500 bore to that sum, is the proportion it bears to the estate as reduced.

5. [After deducting the sum due Peter on his legacy, as thus abated, the balance is to be divided into three parts, between the daughters and Peter, unless George shall elect to bring his advancements into hotchpot in which case the remainder must be divided into four parts.

The case of *Lassiter* v. *Wood,* 63 N. C. R., 360, cited and approved.

37

BARBARA ALEXANDER *v.* PETER A. SUMMEY.

This was a civil action brought to obtain a construction of the will of the the late Peter Summey, of Lincoln county. Proper parties were brought before the Court, and the cause was heard before His Honor, Judge Logan, at the Fall Term 1871 of Lincoln Superior Court.

It was conceded that the testator had supported the plaintiff, a widow and her children for a number of years, that his other daughter Mrs. Dusenbery was well off, and that George had been well advanced in slaves before the war; that Peter A. was the youngest and had lived with his father without reward, and attended to all of his business up to the time of his death.

The following interrogatories were propounded to His Honor by the counsel for both parties.

1. In what kind of money is the pecuniary legacy to Peter A. Summy to be paid?

2. Does it bear interest, if so, from what date?

3. If it is to be paid in good money, out of what property is the amount to be raised or on what is it chargeable?

4. Is the legacy subject to scale or abatement on account of the emancipation of slaves or other causes, or is it entirely lost?

5. Is the 4th clause in the will, specifying that the house and land shall be sold, a specific legacy, and does abate it in favor of the general pecuniary legacy of $2,500?

To which His Honor responded as follows:

"In this case it is the opinion of the Court that the devisees under the 4th (residuary) clause of the will, take the real estate without any abatement in favor of the pecuniary legacy of .$2,500 to Peter A. Summey," and gave judgment accordingly from which Peter A. Summey appealed.

*Bynum* and *Hoke* for the plaintiff.

The devise is specific, the will itself shows it. *Robinson v. McIver*, 63 N. C. 645.

All devises of land are specific. Redfield on Wills, Part II p. 471. Ambler Rep., vol. 1, pp.171, 173.

This legacy of $2,500 is not a charge on the land, and in the case in 6 Jones Eq. does not apply. The clerk's report shows an abundance of property to pay debts, pp. 37, 38, transcript. *Johnson* v. *Farrell* 64 N. C. 266.

*Schenck* with whom was *W. H. Bailey* for Peter A. Summey:

The general pecuiary legacy of $2,500, means good money. Scale law, Acts 1866, ch. 39, does not apply to wills, and see *Lackey* v. *Miller* as to meaning ot the word dollar.

*Barham* v. *Gregory*, Phil. Eq. 243. Legacy to child bears interest from death of testator. *Swann* v. *Swann*, 5 Jones Eq. 297. *Ballantine* v. *Turner*, 6 Jones 224.

The 4th item in the will is a residuary clause, in which personality and realty are blended, and embraces only "what is left'. after paying the general pecuniary legacy of $2,500. *Givins* v. *Givins*, 1 Mur. 192. 16 How. R. p. 1.

This clause of the will does not fall within the exception made in *Robinson* v. *McIver*, 64 N. C. 645.

1. No annuities are charged on the residuum·

2. No specific directions for managing the property are given repelling the idea of sale to pay legacies.

The object and intention of testator was to make Peter A. Summey equal by $2,500 legacy with George, who was advanced, and Barbara whom he had supported, this will be defeated by construing the devises to be specific.

There is no abatement by loss on negroes. This case is distinguished from *Taylor* v. *Johnson*, 63 N. C., 381; *Johnson* v. *Farrell*, 64 N. C., 266.

In both of those cases there was enough personal property undevised to pay the debts and legacies *when testator died*—in our case there was none to pay debts even, and it must come out of the *residuum*.

BARBARA ALEXANDER *v.* PETER A. SUMMEY.

Executor is not responsible for loss of slaves in January, 1865. *Finger* v. *Finger*, 64 N. C., 186.

Court may consider the state of the family in construing this will. *Watkins* v. *Flora*, 8 Ired., 374 ; *Bivens* v. *Phifer* 2. Jones, 436.

I submit that the defendant, Peter A. Summey, is entitled to have his legacy of $2,500 raised, if not in whole, at least in part out of the real estate disposed of in the residuary clause under the doctrine of marshalling.

1. For, in our case the testator disposes of *all* his estate and, to prevent him from " being mocked," his legacy is a charge upon the specific bequests. This is well settled and is consonant with the opinion of the Court and also that of the Chief Justice, *dissentiente*, where the whole learning is thoroughly discussed in *Biddle* v. *Carraway*, 6 Jones Eq., 95.

2. Previous to our act subjecting real estate to be sold for all debts it was well settled in England that if bond creditors exhaust the personal estate, legatees are entitled to be paid out of the realty—where the testator has directed his debts to be paid as in our case—because creditor had two funds &c. 1 *Roper on Leg.*, 622, also p. 637 ; *Foster* v. *Cook*, 1 Bro. C. C., 347.

3. Our act above referred to extends the principle to all debts, because it subjects the real estate to debts without reference to their dignity—hence, if debts exhaust the personal estate the legacy should take their places against the realty. This doctrine has been fully sustained in Pennsylvania. *Armstrong's Appeal*, 63 Penn., 308.

Equity disregards the shadow and deals out substantial justice.

In our case, as shown by the testimony, which is *all* by consent to be treated as facts inferentially from the report, that the personal property was wholly insufficient *at the death of testator*, to pay debts even had all the slaves been sold, which gives the specific legatee of personal property a right to be

subrogated to the rights of the creditors for contribution against the real estate. Why should not the pecuniary legatee, then, by reason of his charge, on the specific legacy taken, be subrogated to the equities of such legatee and thus avoid multiplicity of suits and effect a complete decree.

If it be otherwise, then the specific legatee stands in the better situation by losing his legacy—for if not taken to pay debts he looses it by way of charge. If taken to pay debts, however, he would get its value, *reductio ad absurdu.*

In equity a judicial conversion works no wrong, therefore, that which is instituted is stamped with all the legal incedents which affected the thing converted.

READE, J. The testator left a widow and four children. He gives first, $2,500 to his youngest son, Peter. He then gives a legacy to his widow, and then divides the residue to his four children, including Peter share and share alike, his oldest son George to account for an advancement to him.

The widow is dead, so that it would simplify the statement to say that he gives his youngest son Peter, $2,500, and then divides the residue among all the children including Peter.

It is plain from this statement that the leading idea in the testator's mind was to make all his children equal with an advantage to his youngest son of $2,500.

The testator was old, and we are not informed that he was of more than ordinary intelligence, and as he was near death, and did soon die, we suppose that he was looking to the distribution of his estate, as it had for a long time been, and as it then was without reference to the casualties of the war, of which he took no notice. But soon after his death, and before there could have been a settlement of his estate, the slaves, which constituted the largest part in value of his estate, were emancipated, and there was little left except the land, worth about $5,000.

About half of that amount was required to pay debts, and

if the other half is taken to satisfy Peter's legacy of $2,500, nothing will remain for the other children. Was such a result contemplated by the testator? clearly not. And such a construction of his will would make him "sin in his grave." And on the other hand, to give Peter his legacy in Confederate money, or its value, about $50, would be to "mock" the favorite of his bounty. The general rule is, that a legacy is payable in the currency of the country at the date of the will, but here we had no currency, Confederate notes having become so far depreciated as not to deserve the name, therefore Peter's legacy must be estimated at its nominal value in good money $2,500. But then it must abate so as to bear its share of the loss by emancipation of the slaves. It must be the same proportion to the estate, as it is now left in the hands of the executor, as it would have the whole estate, if it had not suffered the extraordinary casualty of emancipation. For illustration, if the estate would have been worth $10,000, without the casualty he would have been entitled to his legacy in full $2,500. If it is reduced by the casualty to $5,000, he must take but $1,250.

The general and leading intention of the testator must prevail where it can be collected from the will itself; and particular rules of construction must yield something of their rigidity if necessary to effect this purpose. *Lassiter* v. *Wood*, 63 N. C. R., 360.

According to the construction which we put upon this will in order to carry out what appears to have been the leading purpose of the testator, it must (1.) be estimated what would have been the value of the whole estate, embraced in the residue before taking out Peter's legacy, and to be divided after the payment of the debts and expenses of administering, if the extraordinary casualty, emancipation, had not happened. (2.) Estimate what proportion, $2,500 would have been of that sum. (3.) Ascertain the nett amount of the estate now in the executors hands after paying debts and ex-

penses, and take out of that sum the same proportion for Peter's legacy, and then (4.) divide the remainder into three equal parts among three children, including Peter, and leaving George out, unless George will come in and account for the advancements and in that event then into four parts.

This view makes it unnecessary to answer the questions propounded specifically? and we notice the case states that it is desired that this Court should construe the whole will.

This will be certified to the end that there may be proceedings to ascertain the amount in the hands of the executor, and a satisfaction of the legacies in conformity with this opinion. The costs in this Court will be paid by the executor, out of the funds of the estate.

PER CURIAM.