L. N. WILSON and others v. A. M. POWELL and others.

*Confederate Currency—Scale of Legacy.*

A legacy of one thousand "dollars" given in a will executed in June, 1863, the testator dying soon afterwards, is subject to the legislative scale of depreciation which is also applicable to payments made thereon in Confederate money, according to the date of each.

*(Barham* v. *Gregory,* Phil. Eq., 243; *Alexander* v. *Summey,* 66 N. C., 577; *Robertson* v. *Wall,* 85 N. C., 283, cited, distinguished and approved.)

APPEAL from an order made at Fall Term, 1881, of CA-TAWBA Superior Court, by *Seymour, J.*

This was a special proceeding commenced in the probate court for a settlement of the estate and construction of the will of Mahala Sherrill, in which, on a former appeal, the question involving the amount of assets in the hands of the executor was passed upon. 75 N. C., 468.

The question now is as to the proper distribution of the fund, and from the ruling of His Honor, as set out in the opinion of this court, upon exceptions to a referee's report, the defendants appealed.

*Messrs. Hoke & Hoke* and *Battle & Mordecai,* for plaintiffs..
*Messrs. J. M. Clement* and *M. L. McCorkle,* for defendants.

SMITH, C. J. Mahala Sherrill made her will on June 19th, 1863, and died during that summer. The testatrix divides her lands by a place on Ball's creek, called the "High Shoal," giving the portion above to L. N. Wilson, as trustee, for the use of her niece, Elizabeth M. Wilson, during life with remainder to her lawfully begotten heirs of her body, and the portion below to Middleton D. Hobbs, as trustee, for the use of her niece, Belza A. James, during life,

with a similar limitation over upon her death.   The testa-. trix bequeaths to the same trustees respectively, three slaves to each, to be held for the said nieces for life and with like limitations.

In the second clause the testatrix gives a pecuniary legacy of one thousand dollars to the trustee for the use of the said Elizabeth M., and after several other bequests in money and personal property, disposes of the residue of her estate as follows:

Item 17. " My will and desire is that all the rest of my property, not herein disposed of, be sold, and all my debts paid, and the balance of the moneys arising after my debts are paid to be equally divided between Elizabeth M. Wilson and B. A. James in trust as aforesaid."

The executor paid in October and November of the year in which the testatrix died, the aggregate sum of $1,477, in confederate currency to the trustee of the legatee B. A. James; and in January, 1878, to the legatee herself the further sum of $861 in national currency.   The executor has paid to the trustee of Elizabeth M. in the month of August, 1863 and 1864, in confederate currency the amount of $690.25, and in 1867 and 1868 the additional sum of $28.33 in currency of the United States.

In considering the report of the referees and the exceptions thereto, His Honor was of opinion, and so ruled, that the $1,000 legacy is payable in currency, and not subject to the scale, bearing interest after one year from the death of the testatrix; and that the payments made to the legatees in confederate money should be reduced by the application of the scale to each as of the several dates of each.   It was thereupon adjudged that the residuum, after payment of the pecuniary legacy to said Elizabeth M. and deducting certain specified charges, be divided equally between the said residuary legatees, the share of each being charged ·with the several sums paid to the legatee in national cur-

rency; and that they have execution *de bonis propriis* against the executor for the several sums found to be due. It was by consent further adjudged that the sum recovered by said Elizabeth or her trustee, after deducting his commissions and one-half the allowance to the referees, when paid into the office, be distributed by the clerk in equal parts to the said Elizabeth and her six named children, one seventh to each.

The appeal is from the rulings in reference to the application of the scale to the legacies and the confederate currency received towards their discharge; and the case states that counsel on both sides agree that these rulings cover the matters in controversy that arise upon the exceptions, and it is therefore needless to set them out in detail.

The convention which assembled after the close of the late civil war, passed an ordinance declaring that "all executory contracts solvable in money, whether under seal or not, made after the depreciation of said (confederate) currency before the first day of May, 1865, (except official bonds and penal bonds payable to the state) shall be deemed to have been made with the understanding that they were solvable in money of the value of the said currency, subject to rebuttal."

This was to *effectuate*, not to *frustrate*, the intent of the contracting parties, in affixing to the term used a sense in which it was at the time understood by both.

So in *Thorington* v. *Smith*, 8 Wall., 1, it was held by the supreme court of the United States, Chief Justice CHASE delivering the opinion, that it was competent to show in an action brought on a promissory note executed in Alabama in November, 1864, for the payment of ten thousand dollars, that confederate treasury notes constituted the currency at that time in the state, and they were intended in the contract. The rule seems to be that when a currency is designated, that which is in universal use in the country

where the contract is made, will be deemed to be the intended medium of payment. And the same rule is applied in the construction of pecuniary legacies, with slight modications.

A legacy must be paid, says Mr. Toller, in the currency of the country in which the testator was resident at the time. Toller Ex., 321.

Thus it is held that an annuity charged upon lands in Ireland, in a will executed by a testator residing in England, must be paid in England. *Wallis* v. *Brightwell,* 2 Per. Wms., 88.

If a bond be given at Dublin or a note at Jamaica, it must be paid in the current money. So, if in either place there is a sum of money left by will, it shall be paid to the legatee in current money. LORD HARDWICKE in *Saunders* v. *Drake,* 2 Atk., 465.

Recognizing the general rule for determining the currency in which a bequest is to be paid, it is decided in *Barham* y. *Gregory,* Phil. Eq., 243, that in a bequest of " one thousand dollars," contained in the will of a person who died in January, 1864, as of which date it speaks, the testator could not have meant it to be paid in confederate money, inasmuch as it had then ceased to be the currency. A similar construction is put upon a pecuniary legacy of $2,500, given in the will of a testator who died in 1864, and the court declare the general rule to be " that a legacy is payable in the currency of the country at the date of the will, *but here we had no currency,* confederate notes having become so far depreciated as not to deserve the name." *Alexander* v. *Summey,* 66 N. C., 577. Yet in this very case the emancipation of the slaves had so reduced the estate, and the payment of this legacy in good money would have absorbed so large a portion of what remained, that the legacy was cut down to a sum bearing the same ratio to that which its nominal

amount would bear to the whole estate unreduced by the loss of the slaves.

We are reluctant, from any general intent inferred from the tenor of the will, to interfere with the clear and positive dispositions of property made by the testator, because of subsequent casualties or losses in kind or value, the consequences of which he has not thought proper to correct, and we are not disposed to go beyond the strict limits of the precedent. It is our province to ascertain and give effect to the intention of the testator, *as expressed in the will,* and we are not at liberty to mould its provisions to suit the changed condition of the estate, whether resulting from a conversion of one kind into another, or from the loss of a portion of it, because the testator has failed to make modifications in the instrument.

It is a more reasonable method of interpretation to give to testamentary dispositions in money, while confederate money was the only currency in use and was received in discharge of *ante bellum* debts, to consider them payable in the *value* of such currency of which the legislative scale is the measure.

The court below inferred the kind of currency intended from an examination of the provisions of the instrument, and a supposed equality in the bounty provided for the legatees. We think from the fact that the residue is directed to be sold, the testator must rather have contemplated the appropriation of the proceeds in excess of the debts to the discharge of the several moneyed legacies, and none but confederate currency could have been commanded by a sale. We must not overlook the fact that notwithstanding the great depreciation reached, it was the only currency in circulation, (all other having disappeared,) and used in the transactions of daily life.

We have lately recognized confederate treasury notes as the currency in use in July, 1863, and extended to that date

the non-liability of a fiduciary who has acted in entire good faith in receiving it, and closing up a collection, in *Robertson* v. *Wall*, 85 N. C., 283. We recognize it now in putting a meaning upon the word "dollars" employed in the bestowal of the gratuity upon the legatees.

It follows, that as the face value of the legacies is to abate, so must the successive subsequent payments be reduced by the application of the scale to each according to its date.

We do not think those adjudications applicable, which require an endorsed credit upon an ante-war debt to be counted for its full nominal amount, although made in confederate currency. Those decisions proceed upon the ground that the receiving creditor voluntarily and by his own act extinguishes the debt *pro tanto*, and cannot complain. Here, the real value of the legacy is unascertained, and the same rule which determines that value should determine the value of the payments. Besides, this is a dealing between the trustee and his *cestui que trust*, and stands upon different grounds from those transactions which take place between a creditor and his debtor.

There is error, and this will be certified for further proceeding in accordance with this opinion.

Error.                                                                          Reversed.