The plaintiff executors, Walter Clark and R. H. Battle, brought this action to obtain a construction of the will of their testatrix, Eleanor H. Swain. The complaint states:
1. That in the month of February, 1883, the testatrix died in the county of Wake, leaving a last will and testament of which the following is a copy:
"RALEIGH, N.C. January 8th, 1883.
"I, Eleanor H. Swain, of the city of Raleigh, and state of North Carolina, do make and publish this my last will and testament, hereby revoking all others:
"(1). My farm in Pitt and Edgecombe counties, I give to the children of my deceased daughter, Mrs. E. H. Atkins. I wish, from the proceeds of the farm or some other source, that my sister Felton, if surviving me, shall receive two hundred and fifty dollars annually, during her life. The balance of rents go to the children of my daughter. If a sale of the farm is preferable, in time, then the money paid for it must be invested in some kind of stock or property yielding dividends or interest. When Dykins, son of my daughter, becomes of age, there may be a division of this property, each child having an equal share.
"(2). Bank stock in Citizens bank of Raleigh, and in Merchants and Farmers' national bank of Charlotte, with the remaining debt still due from the Kimberly estate in Buncombe county, I leave to be equally divided between the children of my deceased daughter, E. H. Atkins — receiving the interest only, until after each becoming of age.
"(3). Money due me as the sole legatee of my deceased husband, D. L. Swain, from the trustees of the University of North Carolina, I will to my grandson, S. Dykins Atkins.
"(4). The historical collection made by my husband, D. L. Swain, in consideration of his great zeal in providing a good and reliable history of his native state, though unfinished, I *Page 631 
leave with the executors of this will to dispose of by a sale, or a gift, as they believe to be best to insure a fulfillment of the work to the state of North Carolina.
"(5). A tract of land, near Dalton, Georgia, I give to Lula Swain, my granddaughter, and advise her to go and live on it — said to be valuable. Some mountain land, in Buncombe county, in the care of R. V. Blackstock, for sale, with some notes due from sale of same, I give to Lula Swain.
"(6). The debt due with interest, from the estate of the late Jessy Siler, of Franklin, Macon county, I give one-half to Lula Swain, the other half, to be equally divided, to Dot. and Susan Atkins, my granddaughters.
"(7). The University Magazine, I give to Dykins Atkins, my grandson, and all other books I have, if he desires, except my Portrait Gallery, in 4 volumes, I give to Lula Swain, and 2 volumes of the New Testament, I give to Dot. Atkins.
"(8). My family portraits, I leave to the children of my deceased daughter, E. H. Atkins, and always remain with some relation of their mother. They shall not be removed from the old family mansion so long as it may be occupied by one of the family.
"(9). A waiting servant, kind and of good morals, must be provided for the care of my youngest and dearest little Susan Atkins, paid for with bank interest. The same thing may be done for and by Dot. and Dyke., if they like.
"(10). If there should be a residue of the estate not embraced in this will, but may be found among the bonds or notes in the hands of my friend R. H. Battle, attorney, who has in part the management of my business, it will add to the closing up of my earthly affairs. I owe no debt unless in the settlement with Mr. Battle, and in paying any account his father may have left unsettled against me. This matter will be attended to as soon as practicable. I have some funds in Citizens national bank ($1,000), one thousand dollars; after my burial expenses and medical bills are paid, should there be a balance of funds remaining and everything settled, divide between my four grandchildren. *Page 632 
"By the death of my sister, Susan White, I am made by her will sole heir to all but one-fifth of the two acre-lots on which we have lived, my sister Felton owner of a fifth. My will leaves her in possession of the house and lot, which she may retain as long as she lives, without molestation or charge for rents from my heirs, the children of my daughter, E. H. Atkins, deceased. With my sister Felton's consent, I will have the privilege of retaining as engaged, two lots of one-third acre each, fronting New-Berne avenue, extending from eastern corner, and running back south one-half acre, for friends whatever sum the lots are valued, from it I will deduct from each lot five hundred dollars, as a compensation for services freely rendered to my afflicted sisters; names shall be given elsewhere. A tombstone to the memory of my two sisters, Susan and Emma, joined at the head with an arch resting on two stones or pillars. Inscription: Susan White, born August 16th, 1795, born of the spirit July 16th, 1811, died 18th October, 1882. Emma C. White, born February 12th, 1802, died September 23d 1882. United in life, undivided in death.
"I wish to have a tombstone at the grave and to the memory of my son Richard C. Swain, buried in Freeport, Illinois. Inscription: Sacred to the memory of Richard Caswell Swain, son of Hon. David L. Swain and Eleanor, his wife, of North Carolina. Born in Raleigh, November 28th, 1837. Died by accident on railroad, near Shannon, Illinois, January 29th, 1872. Erected by his affectionate mother, E. H. Swain, of Raleigh, N.C.
"I appoint Walter Clark and Richard Battle, attorneys, trustees of my will. Should they refuse, I want them to appoint other reliable persons for the benefit of the heirs, my grandchildren.
"ELEANOR H. SWAIN."
"A disposal of my household goods: The furniture in the big room up stairs shall remain as it is so long as the children of my deceased daughter, E. H. Atkins, shall live here or continue to *Page 633 
visit this old home of their grandmother E. H. Swain. When a sale is desired, the money arising from the articles named, wardrobe, bureau, wash-stand, 2 marble-top tables, 1 lounge, sewing machine, 3 chairs, half dozen cane-bottom chairs, 1 rocking chair, c., 2 small tables like the one I gave sister Felton, 1 pair of large shovel and tongs, large looking-glass, proceeds shall be given to my grandson Dykins; my carpet I give to Dot. and Susan Atkins, also my large bed, 2 pair linen sheets, 2 bed Marseilles covers. Should they desire a division of the bed, it will make a single bed for each, with 2 pair of pillows, 1 pair to each. The small single bedstead, with small feather bed, 2 mattresses and pair of pillows, 2 pair of blankets, are for Dykins. The Marseilles quilts, if too large, may be sold for Sue and Dot. My second size feather bed I give to Lula Swain, also my white plated castors and 11 dinner knives. My white metal tea-set for Dot. Atkins. My large breakfast and dinner blue china set to be divided between my three granddaughters, Lula Swain, Dot. and Sue. Atkins; if a sale is preferable, divide the sum accordingly; 2 large water pitchers, wash-bowl and pitcher to match, 1 dozen goblets, 1 dozen small checkered set, 2 milk basins, divide or sell, money divide between the 3 granddaughters. Tins, pots, kettles, chairs, old blankets, all such trumpery, everything not saleable for its worth, give the servants. Some things are especially given them, my marble-top washstand (broken on one corner) I give to Theny, also a brittania tea pot and sugar bowl. To Sarah a table with 2 leaves, and 3 cain chairs, a coffee-grinder and block, also sausage-grinder and stuffer and bench; my old white merino scarf I give to Matilda, purple woollen shawl to Mary Ned, black cashmere dress and sacque to Emmeline, my water-proof cloak, black velvet and merino shawls to Dot. Atkins. Spoons, knives, forks, will be labelled for those intended for. My new black bunting dress I give to Theny, my old wrapper, two flannel shirts and a good black dress bought and given to Ollie.
"Books and everything I have not specially named may be *Page 634 
given or sold. Dotty may be competent to decide and give to Lula any little thing or things that will be of benefit.
"Matilda, Theny, Sarah, Hetty, Mary, Emmeline, aunt Dicey Lane, our Dicey and Eliza are the servants I consider in my will to have something. Annie's gold thimble and my gold spectacles for little Susa, 6 new large silver table spoons and 2 old ones for Sue. Atkins, 1 dozen silver forks for Dot., 10 breakfast steel knives for Dot., cream ladel for Sue., 7 silver tea spoons for little Susa, and a gold breastpin cross for Susa, Annie's silver fork and a butter knife for Dykins, silver fruit knife marked D. E. P. for Susa.
"This is hurriedly done. If I live a few years longer, I hope to dispose of the most of my effects without this trouble.
"Memorandum, E. H. Swain. Dot. has all her mother's jewelry. May 8th, 1883. (?)
"The furniture of my sisters Susan and Emma will be given or disposed of by sale, for the benefit of my grandchildren, to each an equal share, 2 dozen silver knives, of Susan and Emma's, and a tea white metal set, is for my little Susa, and a silver soup ladel for Lula Swain.
"The names I offer to sell lots to are Walter Clark and Dr. A. Knox. They have their own convenience for payment to the heirs of E. H. Atkins. "E. H. SWAIN."
2. That said will was duly admitted to probate and letters testamentary issued to the plaintiffs who qualified as executors thereof.
3. That the defendants Eleanor H. Atkins, Smith D. Atkins, Jr., and Susan W. Atkins are the grandchildren of the testatrix, they being the children of E. H. Atkins (a deceased daughter of the testatrix) and the defendant Smith D. Atkins, Sen. The said children are infants of the respective ages of about four, nine and twelve years, and reside with their father at Freeport, in the state of Illinois.
4. The said infants have no guardian in this state, but their *Page 635 
father, Smith D. Atkins, has been appointed their guardian in the state of Illinois.
5. That said Eleanor H. Atkins is the same person who is called "Dot. Atkins" in said will. Smith D. Atkins, Jr., is the same who is called "S. Dykins Atkins," "Dyke Atkins" and "Dyke" in said will. And Susan W. Atkins is the same person who is called "Susan" and "Sue. Atkins" in said will.
6. That said Lula Swain is the granddaughter of the testatrix and is about nineteen years of age, and resides with her step-father, B. P. Steele, in Shelbyville, in the state of Tennessee. She has no guardian in this state, but the said Steele is her guardian in Tennessee.
7. That Walter Clark and the defendants (with the exception of Smith D. Atkins, senior and said Steele) are the sole legatees and devisees under the will of the testatrix, and are all and the only persons interested therein, Elizabeth Felton, the sister of the testatrix, having died since the death of the testatrix, and all the legacies to servants having been settled.
8. That the testatrix owned at her death an undivided four-fifth interest and share in lots Nos. 174 and 175 in the plan of the city of Raleigh, and said lots adjoin each other and were together occupied as a residence of the testatrix at her death, and contain one acre each; a plantation in Pitt and Edgecombe counties in this state, containing about — acres; a tract of land containing about 400 acres near Dalton, in the county of Murray, in the state of Georgia; about 1,000 acres of mountain land in Buncombe county, in this state, which she had placed in charge of R. V. Blackstock, of Buncombe county, for sale; two thousand dollars of notes of individuals given for land in Buncombe county, sold by the testatrix through her agent R. V. Blackstock.
9. The testatrix had one thousand dollars to her credit in the Citizens national bank at Raleigh, North Carolina, and she owned bonds of the North Carolina railroad company of the face value of $2,500, and bonds of the state of North Carolina *Page 636 
of the face value of $300, which bonds were in the Citizens National bank of Raleigh, and held by said bank as a special deposit by the testatrix. She also owned ten shares of the capital stock of the Merchants and Farmers' national bank of Charlotte, North Carolina, but she did not own at the time of her death any shares of the capital stock of the Citizens national bank of Raleigh, and never had any of the capital stock of said bank. That there was due the testatrix at the time of her death from the estate of John Kimberly, late of Buncombe county, $6,500.
10. That other moneys and specific chattels were owned by the testatrix, about the disposition of which there is no controversy.
11. All the debts except one, not admitted to be due, have been paid by the executors who are anxious to settle and distribute the estate; but they encounter difficulties in the construction of the will, arising from its obscurity in many of its clauses, for a solution of which they ask the court for its directions, in the following particulars, to-wit:
1. Shall the executors surrender to the defendants Eleanor H. Atkins, Smith D. Atkins, Jr., and Susan W. Atkins or their general guardian hereafter to be appointed in this state, the possession and control of the farm in Pitt and Edgecombe counties, and devised in the first item of the will? Or is it the duty of the executors or trustees to hold said plantation and collect the rents and profits thereof until said Eleanor H., Smith D., Jr., and Susan Atkins arrive at lawful age?
2. Have said executors, as executors or trustees under said will, the power to sell said plantation mentioned in item one of said will.
3. Is it the duty of the executors, as trustees, to hold and invest and control the legacies to said Eleanor H., Smith D., and Susan Atkins set forth in the second item of the will, until the legatees arrive at lawful age, or is it the duty of said executors to deliver and pay over said legacies to the proper guardian of the legatees, when such guardian shall be legally appointed? *Page 637 
4. Do the North Carolina railroad bonds and the bonds of the state of North Carolina held by the Citizens national bank at Raleigh, as a special deposit for their testatrix as alleged in the complaint, pass to Eleanor H., Smith D., and Susan Atkins, or to the executors in trust for them by the terms of the will?
5. Does the $1,000 to the credit of the testatrix in said Citizens national bank of Raleigh pass to said Eleanor H., Smith D., and Susan Atkins, or to the executors in trust for them by the terms of the second item of said will?
6. Is it the duty of the executors to retain money enough in their hands to satisfy the directions in item nine of said will? And if such is their duty, shall they retain such money out of the legacies to the Atkins children or out of the residuary fund?
7. What is the duty of the executors in regard to the lots in the city of Raleigh, devised or directed to be sold to Walter Clark and Dr. A. W. Knox?
8. Is it the duty of the executors, as trustees, or have they the power to sell the interest of their testatrix in said lots, Nos. 174 and 175, in the plan of the city of Raleigh?
9. Have the executors, as trustees, any control over said interest of their testatrix in said lots Nos. 174 and 175, and if so, what are their duties with respect to said lots?
All of the defendants were made parties, and guardians ad litem were appointed for the infant defendants, who severally answered the complaint and admitted the correctness of the several allegations thereof, and thereupon His Honor rendered the following judgment:
1. That said executors have no control over the plantation in Pitt and Edgecombe counties, and that they surrender the same to the management and control of the said Eleanor H., Smith D., and Susan W. Atkins or their general guardian when such shall be appointed in this state, and that they (the said executors) have no power to sell said plantation or farm.
2. That it is the duty of the executors to hold and invest and control the legacies bequeathed by the second item of the will *Page 638 
until the legatees arrive at full age, paying over the interest and income thereof to the guardian or guardians of the legatees.
3. That the bonds of the North Carolina railroad company and the bonds of the state of North Carolina, described in paragraph nine of the complaint, do not pass to said Eleanor H., Smith D., and Susan Atkins by the terms of second item of said will, and it is the duty of said executors to dispose of the same as part of the residuary fund.
4. That the sum of one thousand dollars on deposit in the Citizens national bank, as described in paragraph nine of the complaint, does not pass to the said Eleanor H., Smith D., Jr., and Susan W. Atkins by the terms of second item of the will, and the executors shall dispose of the same as part of the residuary fund.
5. That the executors shall comply with and carry out the directions of item nine of the will, and the money necessary thereto they shall pay out of the legacies to said Eleanor H., Smith D., Jr., and Susan W. Atkins, as set forth in second item of the will as construed by this judgment.
6. That the executors have no power or control over the devises and legacies to A. W. Knox and Walter Clark.
7. That Walter Clark and R. H. Battle have no power, either as executors and trustees, to sell or otherwise control the testatrix's undivided interest in lots Nos. 174 and 175 in the plan of the city of Raleigh, and they have no duties to perform in connection therewith.
The only exceptions to the judgment of the court below from which the defendants appealed, were taken by the guardian ad litem of Eleanor H., Smith D., and Susan W. Atkins, and they are as follows:
1. For that it declares that the bonds of the North Carolina railroad company and the bonds of the state of North Carolina, described in paragraph nine of the complaint, do not pass to the said Atkins' children by the terms of the second item of the will, and it was the duty of the executors to hold and dispose of the same as part of the residuary fund of their testatrix. *Page 639 
2. For that it declares that the executors shall comply with and carry out the directions of item nine of the will, and the money necessary thereto they shall pay out of the legacies to Eleanor H., Smith, D., Jr., and Susan W. Atkins.
3. For that it declares it to be the duty of the executors to hold, invest and control the legacies of Eleanor H., Smith D., Jr., and Susan W. Atkins, bequeathed by the second item of the will, until the legatees arrive at full age, paying over the interest and income thereof to the guardian or guardians of the legatees.
There is no error, in our opinion, in the construction given by His Honor upon the second item of the will, except as to the state and railroad bonds.
The second item reads: Bank stock in Citizens national bank of Raleigh and in Merchants' and Farmers' national bank of Charlotte, with the remaining debt still due from the Kimberly estate in Buncombe county, "I leave to be equally divided between the children of my deceased daughter E. H. Atkins, receiving the interest only, until after each becoming of age."
The testatrix owned at the time of her death one thousand dollars, to her credit in the Citizens national bank, and she owned bonds of the North Carolina railroad company of the face value of $2,500 and bonds of the state of North Carolina of the face value of $300, which bonds were in the Citizens bank, and were held as a special deposit by the testatrix. She also owned ten shares of the capital stock of the Merchants' and Farmers' national bank, but she did not own at the time of her death and never had owned any shares of the capital stock of the Citizens bank.
The first question presented is, did the railroad bonds and the North Carolina state bonds pass to the children of E. H. Atkins, *Page 640 
under the description of bank stock in Citizens national bank of Raleigh.
In the construction of wills, the intention of the testator is always held to be the only guide in its interpretation. "It is a lex legum, a general rule, a universal maxim, that in all cases, the design and intent of the framer, when it can be indisputably ascertained, shall prevail; quodverba intentioni inservire debent. And the intention may be collected either from the particular provision or the general context." Potter's Dwarris on Statutes, 174, 175. To the same effect is Procter v. Pool, 4 Dev., 370, in which Chief-Justice RUFFIN says: "No positive rule can be laid down for ascertaining the intention of the maker of a deed or other instrument, but his intention is to be collected from the whole instrument taken together." See also Alexander v. Summey, 66 N.C. 577; and Lassiterv. Wood, 63 N.C. 360.
In looking to the general context of the will of Mrs. Swain it must be evident to every plain mind, unbiased by the technical rules of construction, that it was her intention to bequeath by the second clause of her will the state and railroad bonds which she had on deposit in the Citizens bank, and that calling them "bank stock" was the result of ignorance or inadvertence. She had no bank stock, but she manifestly intended to bequeath something. What was it? It was something she had in the bank. It was not the thousand dollars she had deposited there, for she expressly mentions and disposes of that in the tenth clause of her will. The bonds then are the only other things she had in the bank, and the inference is irresistible that they were the things, which she, by a misdescription, called "bank stock," intended to bequeath.
In viewing the will in all its parts, it is evident she did not intend to die intestate as to any portion of her estate, and that she believed she had disposed of every part thereof. For in the tenth clause, she directed that, "if there should be a residue of the estate not embraced in this will, but may be found in the hands of my friend, R. H. Battle, attorney, who has in part the *Page 641 
management of my business, it will add to the closing up of my earthly affairs. * * * I have some funds in the Citizens national bank, one thousand dollars; after my burial expenses and medical bills are paid, should there be a balance of funds remaining and everything settled, divide between my four grandchildren."
This is the only legacy in the will directed to be divided between the four grandchildren, and it consisted of the balance of the residue of her estate, after the payment of burial expenses and medical bills; and she restricts the residue to the bonds or notes in the hands of R. H. Battle and the one thousand dollars deposited in the Citizens bank. It is evident, when she made the residuary bequest, that she thought she had disposed of the state and railroad bonds by the second clause of her will; and to hold that those bonds fall into the residue to be divided between her four grandchildren, would be doing violence to the intention of the testatrix.
The case lies so close to the shadowy lines of distinction between general and specific legacies, and latent and patent ambiguities, that very little light is to be derived from the application of the technical rules of construction. But we find the following authorities which serve to sustain the construction we have given:
In Gallini v. Noble, 3 Mer. Chan. Rep., 690, where the testator bequeathed all his money in the Bank of England to his daughters, it appeared that he never had money in the bank, but was entitled to some 3 per cent. and 5 per cent. bank annuities, and it was held that the annuities passed. It was compared to the case of an incorrect description of the intended legatee, and to the case where leaseholds have been held to pass under the devise of lands, "there being no other property to answer the description." Quennell v. Turner, 13 Beav., 240.
In Door v. Gray, 1 Ves., 255, where a husband bequeathed to his wife seven hundred pounds East India stock, having none, but there were seven hundred pounds bank stock to which *Page 642 
his wife was entitled as executrix, which he afterwards transferred in his own name, LORD HARDWICK held that the bank stock should go to the widow — the judge being of opinion that it was a case merely of error of description.
In Penticost v. Ley, J. W., 207, a testator bequeathed one thousand pounds Long annuities, "now standing in my name or in trust for me." At the date of the will the testator had no Long annuities, but had 3 per cent. reduced annuities, and it was held that that sum passed by the bequest.
These cases, like that of the bequest of the "white horse" under the description of a black horse, were evidently sustained upon the principle of the maxim false demonstratio non nocet.
We do not think there was any error in the directions given by His Honor upon the point which constitutes the defendants' second ground of exception. It would be manifestly unjust, and could not have been intended by the testatrix, that the legatee Lula Swain should bear any part of the expenses of providing servants for the other legatees, the Atkins children.
As to the third exception, we are of opinion His Honor's construction of the second item of the will, in the particular of that exception, was correct. The testatrix leaves the legacies passing by that item "to be equally divided between the children of my deceased daughter E. H. Atkins, receiving the interest only, until after each becoming of age." It is clearly a legacy to each of the children to be paid on his or her attaining the age of twenty-one years, receiving the interest in the meantime. Who is to pay the legacies when the legatees arrive at age, and the interest accruing in the interim? Of course, the executors. The fund remains in their hand until such time as they can execute this clause of the will by paying over to each legatee his or her share of the legacy, as they respectively arrive at the age of twenty-one years.
Our conclusion is, that the judgment of the superior court must be affirmed, except as to the directions of His Honor with regard to the disposition of the state and railroad bonds, and we *Page 643 
think in that there is error. Our opinion is that these bonds passed by the second clause of the will to the children of Eleanor H. Atkins, and that the judgment must be reformed in conformity to this opinion, and costs must be paid out of the residuary fund, and to that end this opinion must be certified to the superior court of Wake county.
Judgment accordingly.