### W. T. HUNT ET AL. v. G. W. JONES ET AL.

#### (Filed 23 May, 1917.)

**1. Wills—Interpretation—Intent—Equality of Division.**

> Where it appears from the will, construed as a whole, that the dominant intent of the testator is an equality of division of the estate among his children, this intent will prevail over minor considerations in conflict with it, and where the language, in case of doubtful meaning, will permit, the early vesting of estates is favored.

**2. Same—Bodily Heirs—Children—Estates—Contingent Remainders — Deeds and Conveyances.**

> Where from the entire will it appears that a testator intended an equal division of his estate among his children after the death of his wife, which has occurred, a devise of lands to two of his daughters "supposed to contain 535 acres, jointly, so long as they live together, and, if they should see fit to separate, then it is to be equally divided between them and their bodily heirs; and if either of them should die without bodily heirs, it is to go to the living one," etc., without residuary clause or disposition of the property if both of the daughters should die without bodily heirs: *Held,* the testator's intent was an equal division of the land between the daughters should they separate, and in the event of the death of either without children, their share would go to the other; hence a conveyance by both of them will pass a good and entire title.

CIVIL ACTION, tried by consent by *Cox, J.,* at Chambers, 21 April, 1917; from CHATHAM.

This is an action to determine the title to a tract of land.

W. A. Marcom was formerly the owner of the lands in question. He died leaving a will which was duly probated on 27 September, 1895, a copy of which is as follows:

HUNT *v.* JONES.

I, W. A. Marcom, of sound mind and memory, blessed be God, and considering the uncertainty of life and the certainty of death, do make and declare this to be my last will and testament in manner and form following, to wit:

Item First: I give and bequeath to my two daughters, Fidellia and Cora Marcom, $300 each, and a good bed and furniture each, with all the bed clothing that they have made themselves. One cow and calf each or, in lieu thereof, $20 each. This I give to them to make them equal with the rest of my children that I have given them heretofore. Also I give Fidellia the sewing machine and Cora Marcom the organ.

Item Second: I give and bequeath to my beloved wife, Nancy Marcom, all of my home tract of land, consisting of the tract on which the dwelling stands, the Harward tract, and the Yates tract, together with all my live stock of every description. All of my farming tools of every description; buggy and carriage; all of my household and kitchen furniture (except what I have given to my two daughters, Fidellia and Cora Marcom), or so much thereof as she sees proper to keep. I also give to my wife, Nancy Marcom, all the interest on my bank stock notes and money; also my stock of goods that I have on hand at my death, if she sees proper to keep it, and if she does not see proper to keep it, she has the privilege to turn it over to my executors hereinafter named, for them to dispose of to the best advantage and she to have the proceeds or as much of it as she needs. All this I give to my wife, Nancy Marcom, during her natural life, and after her death it is my will and desire that all of my property, both real and personal, shall be divided as follows, to wit:

Item Third: It is my will and desire after my wife's death for my granddaughter, Nancy Jane Yates, and her bodily heirs to have 80 acres of land of the east end of my land, commencing at a post-oak stump, mine and William Yates' corner, thence in same direction to John Murrell's line, adjoining the land on which she now lives; also, $100 in money as her share of my estate.

Item Fourth: I give and bequeath to my two daughters, Fidellia and Cora Marcom, the balance of my land after my wife's death (that I will to her), supposed to contain 535 acres, jointly so long as they live together; and if they see proper to separate, then it is to be divided equally between them and their bodily heirs, valued at $2,000; and if either of them should die without bodily heirs, it is to go to the living one, and $500 each in bank stock.

Item Fifth: I give and bequeath Mary Jane Ferrell ten shares of bank stock in the Morehead Banking Company, also the surplus on the shares, also $500 in money.

Item Sixth: I give and bequeath to my daughter Elizabeth Stone ten shares in bank stock in the Morehead Banking Company, also the surplus on ten shares; also $500 in money.

Item Seventh: It is my will and desire that my son J. W. Marcom's wife, Lana Marcom, and his bodily heirs, to have the land that I bought of the Jeffers boys, on which Peter Willis now lives, containing 215 acres and valued at $1,500, provided he pays off the Nancy Bachelor debt; and if he fails that debt, in that case there is enough to be sold off of that land to pay said debt.

Item Eighth: It is my will and desire that after the death of my wife that all the beds and bed clothing that is on hand that I have not heretofore willed away be equally divided between my five living children.

Item Ninth: It is my will and desire that my executors hereinafter named shall give me and my wife's body a decent burial according to the wishes of my friends and relatives, with a tombstone at the head of each and inclosed with iron railings.

Item Tenth: It is my will and desire that my executors hereinafter named shall after the death of my wife, Nancy Marcom, sell all my personal property that I have left to her except beds and bed clothes.

Item Eleventh: It is my will and desire that my executors shall collect all the debts due me that can be collected and after paying the amounts that I have heretofore willed away and the remainder to be equally divided between my five now living children.

Item Twelfth: I hereby appoint my friend C. R. Scott and Harmon Sears my executors, to carry out this my last will and testament.

All interlining made before signing.

WM. A. MARCOM. [SEAL.]

Signed and sealed in the presence of

    A. THEO. COTTON,

    WILLIAM S. OLIVE.

The wife, Nancy Marcom, has since died, and one of the daughters, Cora Marcom, has married, her husband being H. W. Trollinger. To this union there have been born two children. Cora Marcom Trollinger and her sister, Fidellia Marcom, reside together.

After the death of the widow, Cora Marcom Trollinger, with H. W. Trollinger, her husband, and Fidellia Marcom, executed a deed in due form to plaintiffs.

The plaintiffs thereafter contracted with the defendants to sell a portion of the 535-acre tract. The defendants refused to comply with the terms of the sale on the ground that Cora Marcom Trollinger and Fidellia Marcom did not take a fee-simple title, and that W. T. Hunt

and Brothers did not receive title from them, and that, therefore, W. T. Hunt and Brothers are unable to convey to these defendants such title.

The matter was submitted to Judge Albert L. Cox, holding the courts of the Fourth Judicial District, and he held that Cora Marcom Trollinger and Fidellia Marcom took the land in fee and were able to convey and did convey to plaintiffs a title in fee simple, and that, therefore, W. T. Hunt and Brothers can convey to the defendants such title.

Judgment was rendered in favor of the plaintiffs, and the defendants appealed.

*Percy J. Olive for plaintiffs.*
*J. C. Little for defendants.*

ALLEN, J. The decision of the controversy depends on the construction of the fourth item of the will of W. A. Marcom, and if this stood alone it would not be free from difficulty because of the use of "bodily heirs" twice in the same item. We must, however, look at the whole will and not at detached portions, as "The primary purpose is to ascertain the intention of the testator from the language used by him, taking the will as a whole, and not separate parts of it." *Taylor v. Brown,* 165 N. C., 161.

Again: "The first taker in a will is presumably the favorite of the testator, *Rowalt v. Ulrich,* 23 Pa., 388; *Appeal by McFarland,* 37 *ibid.,* 300; and in doubtful cases the gift is to be construed so as to make it as effectual to him as soon as possible or as soon as the language will warrant. *Wilson v. McKeethan,* 53 *ibid.,* 79. And, too, the law favors the early vesting of an estate, to the end that property may be kept in the channels of commerce. Underhill on Wills, sec. 861; *Hillard v. Kearney,* 45 N. C., 221; *Galloway v. Carter,* 100 N. C., 111, and cases there cited." *Dunn v. Hines,* 164 N. C., 120.

It is also a rule of construction that the dominant idea pervading the whole will must control, and that minor considerations must yield if in conflict with it; and it may well be said of the will before us, as was said in *Lassiter v. Wood,* 63 N. C., 363: "It is apparent that the leading purpose of the testator was to make all his children equal. The purpose of the testator, as gathered from the will, is always to be carried out by the court, and minor considerations, when they come in the way, must yield. Especially is this so when the purpose is in consonance with justice and natural affection."

"The general and leading intention of the testator must prevail where it can be collected from the will itself; and particular rules of construction must yield something of their rigidity if necessary to effect this purpose." *Alexander v. Summey,* 66 N. C., 582.

The dominant idea in the will is equality among the children, and if special solicitude is shown in favor of any, it is in behalf of the two daughters Fidellia and Cora.

In the first item of the will he gives each of these daughters $300 and certain personal property, "to make them equal with the rest of my children that I have given them heretofore."

In the second he provides for his wife and in the third for a grandchild.

He values the land in the fourth item at $2,000, and gives to each of the daughters $500 of bank stock, making the share of each $1,500, and in the fifth, sixth, and seventh items he provides for his other three children and values each share at $1,500.

This manifests a clear purpose on the part of the testator to divide his property equally among his children and to place no limitations upon their use and enjoyment of it, except in the single instance of one of the daughter dying "without bodily heir," which when used in this connection is usually interpreted issue or children. *Faison v. Moore,* 160 N. C., 148.

In the first part of the item he gives the land in fee to the two daughters while living together. Why should he wish to change it to an estate in common with their children, "if they see proper to separate"?

The language is, "to be equally divided between them and their bodily heirs," which indicates a purpose, in the event of a separation, to have an equal division between the daughters, and that the share of each should belong to her and her heirs, with further provision that if either died without children her share should belong to the other.

This construction is also strengthened by the fact that there is no disposition of the property if both daughters should die without issue, and no residuary clause.

If, therefore, the estate in fee is in the two daughters, and upon the death of either without children her interest belongs to the survivor, it follows that the deed of both of them will convey and pass the entire title, and, if so, the plaintiffs can make a good title for the land in controversy.

Affirmed.